## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM BASEMORE, | : | Civil No. 1:22-CV-01700 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| THEODOOR VOORSTAD, *et al.*, | : | |
| | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

## MEMORANDUM

Pending before the court are Defendants' motions to dismiss the amended complaint pursuant to Fed. R. Civ. P. 12(b)(6), Docs. 46, 48, 60; Plaintiff's motion to amend/correct the amended complaint, Doc. 53; Plaintiff's motions for appointment of counsel, Docs. 51, 72; and Plaintiff's motion to hold the case in abeyance, Doc. 71. For the following reasons, the court will grant two of the three motions to dismiss in full, and grant the third motion in part. The sole surviving claims will be an Eighth Amendment claim and a contract violation claim against Defendant Voorstad. The court will grant Plaintiff leave to amend the complaint. The court will deny Plaintiff's motions to appoint counsel and to hold the case in abeyance.

## PROCEDURAL HISTORY

Plaintiff initiated this action by filing a complaint under 42 U.S.C. § 1983 against nine defendants in October of 2022. (Doc. 1.) Of the nine defendants,

Plaintiff could only identify the following six: (1) Theodoor Voorstad,

("Voorstad"), the medical director at the State Correctional Institution at Camp

Hill, Pennsylvania ("SCI-Camp Hill"); (2) William Nicklow ("Nicklow"), Deputy

Superintendent of Centralized Services at SCI-Camp Hill; (3) Laurel Harry

("Harry"), Facility Manager at SCI-Camp Hill; (4) Beth Herb ("Herb"),

Correctional Health Care Administrator at SCI-Camp Hill; (5) Tony Heist

("Heist"), the Facility Grievance Coordinator at SCI-Camp Hill; and (6) Keri

Moor, Assistant Chief Grievance Officer for the Pennsylvania Department of

Corrections ("DOC").  (*Id.*, pp. 3–5, 7–8.)[1]  The remaining three defendants were

identified as unknown, with one identified as a nurse and the other two identified

as the "Contracted Medical Health Vendor."  (*Id.*, pp. 5, 7–8.)  The complaint

raises an Eighth Amendment deliberate indifference to a serious medical needs

claim, a Fourteenth Amendment due process claim, and a First Amendment right

to freedom of expression claim, all stemming from Plaintiff's discontinued course

of hormone treatment at SCI-Camp Hill.  (*Id.*, pp. 14–17.)  On November 10, 2022,

Plaintiff identified the two unnamed medical vender defendants as Wellpath Care

("Wellpath") and Centurion Managed Care ("Centurion").  (Doc. 6.)

Following service of the complaint, the eight named defendants filed

motions to dismiss the complaint for failure to state a claim under Fed. R. Civ. P.

---

[1] For ease of reference, the court utilizes the page numbers from the CM/ECF header.

12(b)(6).  (Docs. 19, 25, 28.)  Before these motions were addressed by the court, Plaintiff filed a motion to amend her complaint.  (Doc. 30.)  On February 27, 2023, the court granted Plaintiff's motion and filed the amended complaint, Doc. 32, which is the operative complaint in this action.  (Doc. 33.)

In the amended complaint, Plaintiff identifies two additional defendants: (1) Matt Grimes ("Grimes"), a Psychologist at SCI-Camp Hill; and (2) Ademola Bello ("Bello"), a Psychiatrist at SCI-Camp Hill.  (Doc. 32, p. 2.)  Plaintiff continues to identify an unnamed defendant: "Jane Doe", a registered nurse at SCI-Camp Hill.  (*Id.*, p. 3.)  The following is a summary of the Plaintiff's alleged facts in the amended complaint.

On July 22, 2020, Plaintiff met with Defendant Bello via video-conference, and was diagnosed as having Gender Dysphoria.  (*Id.*, p. 4.)  Defendant Bello told Plaintiff that "[t]hey may start you right away with hormone treatment."  (*Id.*)

On July 24, 2022, Plaintiff was given a "pass" to go to the medical department and meet with Defendant Voorstad.  (*Id.*)  Defendant Voorstad told Plaintiff that "there were no contraindications discovered," and gave Plaintiff a DC-572 informed consent for feminizing hormone therapy treatment.  (*Id.*)  Defendant Voorstad read the DC-572 form aloud and Plaintiff inquired about birth control options.  (*Id.*)  Without addressing Plaintiff's inquiry, both Plaintiff and Defendant Voorstad electronically signed the DC-572 form.  (*Id.*)

On August 12, 2020, Plaintiff was waiting for the nurse who was to dispense the evening medication that would include the feminizing hormone therapy medication, when the nurse advised, "[y]ou don't get any more medication," and then walked off.  (*Id*., pp. 3, 5.)[2]  Plaintiff alleges that this abrupt removal of medication was done without any discussion or documentation regarding contraindications or security concerns.  (*Id*., p. 5.)  Plaintiff then filed an inmate request to the assigned psychologist, Defendant Grimes, and an inmate request with the Prison Rape Elimination Act ("PREA") Compliance Manager Kendall regarding the termination of the medication.  (*Id*.)  Plaintiff and Defendant Grimes met, and Defendant Grimes told Plaintiff that treated had stopped because "[s]omebody dropped the ball."  (*Id*.)

On August 14, 2020, Plaintiff submitted a second inmate request to the PREA Compliance Manager Kendell informing her of the termination of medication and seeking the name of the psychiatrist who completed Plaintiff's assessment and diagnosis.  (*Id*.)  Plaintiff then met with Defendant Voorstad, and requested that the treatment be reinstated.  (*Id*.)  Defendant Voorstad stated "[i]f we do it for you we'll have to do it for everyone."

---

[2] Plaintiff fails to allege that the hormone therapy treatment was ever initiated in the statement of facts, but alleges that three weeks of hormone treatment was completed before the medication was terminated later in the complaint.  (Doc. 32, p. 10.)

On August 27, 2020, Plaintiff's diagnosis of Gender Dysphoria was removed.  (*Id*.)

On December 14, 2020, Plaintiff sent an inmate request to the PREA Compliance Manager Kendall requesting to speak with Defendant Grimes concerning Plaintiff's desire to have an orchiectomy.  (*Id*.)

On December 22, 2020, Plaintiff sent an inmate request to Psychologist Howdyshell requesting to speak with Defendant Grimes.  (*Id*.)

In April of 2021, Plaintiff met with Defendant Grimes and was told that the diagnosis of Gender Dysphoria by Defendant Bello was removed.  (*Id*., p. 6.)

On September 23, 2021, Plaintiff met with the Psychiatric Review Team ("PRT") consisting of Psychiatrist Mushgaq, Psychologist Stein, Defendant Grimes, Unit Manager Digby, Counselor Arnold, and Counselor Fagnani.  (*Id*.) Plaintiff's Gender Dysphoric condition was "re-established" by Psychiatrist Mushgaq.  (*Id*.)

On October 4 and 5, 2021, Plaintiff was scheduled to meet with the medical department, but these meetings did not occur.  (*Id*.)

On October 22, 2021, Plaintiff submitted an inmate request to Defendant Herb informing her about the PRT meeting and the need to restart hormone therapy.  (*Id*.)  Plaintiff also submitted an inmate request to Psychiatrist Mushgaq

informing her that another month has passed and hormone therapy had not resumed.  (*Id*.)

Plaintiff alleges that there has been no further contact with a psychiatrist since September 23, 2021.  (*Id*., p. 7.)

In March and April of 2023, all Defendants filed motions to dismiss the amended complaint pursuant to Fed. R. Civ. P. 12(b)(6).  (Docs. 46, 48, 60.)  On March 30, 2023, Plaintiff filed a motion to amend/correct the amended complaint. (Doc. 53.)  However, a review of this document demonstrates that Plaintiff is not seeking leave to file a second amended complaint, but states that there is an error in the amended complaint asserting that Defendant Grimes does not have a qualifying Master's Degree, and Plaintiff would like to request discovery to prove that such a degree exists.  (*Id*.)

While these motions to dismiss were pending, Plaintiff also filed motions for appointment of counsel.  (Docs. 60, 72.)  Additionally, Plaintiff filed a motion to hold the case in abeyance, which appears to be a motion for an extension of time while Plaintiff is placed in the restricted housing unit.  (Doc. 71.)

The motions have been fully briefed, and the court will now address the pending motions.

## JURISDICTION AND VENUE

The court has jurisdiction over Plaintiff's action pursuant to 28 U.S.C. § 1331, which allows a district court to exercise subject matter jurisdiction in civil cases arising under the Constitution, laws, or treaties of the United States.  Venue is proper in this district because the alleged acts and omissions giving rise to the claims occurred at SCI-Camp Hill, located in Cumberland County, Pennsylvania, which is located within this district.  *See* 28 U.S.C. § 118(b).

## MOTION TO DISMISS STANDARD

In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*. (quoting *Twombly*, 550 U.S. at 556).  "Conclusory allegations of liability are insufficient" to survive a motion to dismiss.  *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678–79).  To determine whether a complaint survives a motion to dismiss, a court identifies "the elements a plaintiff must plead to state a claim for relief," disregards the allegations "that are no more than conclusions and thus not entitled to the assumption of truth," and determines

whether the remaining factual allegations "plausibly give rise to an entitlement to relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012) *abrogated on other grounds by Mack v. Yost*, 968 F.3d 311 (3d. Cir. 2020).

When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)).  In addition to reviewing the facts contained in the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents" attached to a defendant's motion to dismiss if the plaintiff's claims are based upon these documents.  *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc*., 998 F.2d 1192, 1196 (3d Cir. 1993)).

The pleadings of self-represented plaintiffs are to be liberally construed and held to a less stringent standard than formal pleadings drafted by attorneys.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Fantone v. Latini*, 780 F.3d 184, 193 (3d Cir. 2015), as amended (Mar. 24, 2015).  Self-represented litigants are to be granted leave to file a curative amended complaint even when a plaintiff does not

seek leave to amend, unless such an amendment would be inequitable or futile.
*See Est. of Lagano v. Bergen Cnty. Prosecutor's Off.*, 769 F.3d 850, 861 (3d Cir. 2014); *see also Phillips*, 515 F.3d at 245.  A complaint that sets forth facts which affirmatively demonstrate that the plaintiff has no right to recover is properly dismissed without leave to amend.  *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 106 (3d Cir. 2002).

## DISCUSSION

### A. DOC Defendants' Moton To Dismiss Will Be Granted.

On March 13, 2023, Defendants Nicklow, Harry, Herb, Heist, Moore, and Grimes (collectively referred to as the "DOC Defendants") filed a motion to dismiss the amended complaint pursuant to Fed. R. Civ. P. 12(b)(6).  (Doc. 46.) Plaintiff has failed to allege any personal involvement on the part of the DOC Defendants.  Therefore, the motion will be granted and the claims against DOC Defendants will be dismissed.

First, Plaintiff raises an Eighth Amendment deliberate indifference to a serious medical needs claim against Defendant Herb.  (Doc. 32, p. 10.)  Plaintiff also alleges that Defendant Herb violated her First, Fourth, Fifth, and Fourteenth Amendment rights.  (*Id*., p. 11.)  Plaintiff bases liability on Defendant Herb's position as Correctional Health Care Administrator.  However, Plaintiff fails to

allege that Defendant Herb is a medical professional.  Instead, Plaintiff alleges that she is an administrator.  (*Id*., p. 2.)

Prison officials violate the Eighth Amendment when they act with deliberate indifference to a prisoner's serious medical needs.  *See Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976).  To sustain a constitutional claim under the Eighth Amendment for inadequate medical treatment, a plaintiff must make (1) an objective showing that her medical needs were serious, and (2) a subjective showing that the defendants were deliberately indifferent to those medical needs.  *See Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017).  A serious medical need is "one that has been diagnosed by a physician as requiring treatment or is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cty. Corr. Inst'l Inmates v. Lanzaro*, 834 F.2d 326, 346–47 (3d Cir. 1987) (citation omitted).  A prison official is deliberately indifferent when he or she "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

The Third Circuit has stated that "[p]rison officials who are not physicians are entitled to defer to the medical judgment of staff physicians, *see Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993), and an administrator does not become responsible for the inmate's medical treatment simply by virtue of reviewing an inmate grievance."  *Smith v. O'Boyle*, 251 Fed. Appx 87, 89 (3d Cir. 2007).

Furthermore, DOC policy places overall responsibility for diagnosis and treatment of Gender Dysphoria on the Department of Chief Psychiatrist, the Department Chief of Clinical Services, and the Department Director of Psychology.  DOC Policy 13.2.1 § 19(a).

Here, Plaintiff has clearly alleged that she was under the care of multiple medical professionals during the period at issue.  Therefore, Plaintiff has failed to establish that Defendant Herb, in her role as Correctional Health Care Administrator, is liable under the Eighth Amendment for the termination of treatment.  The amended complaint also does not include any facts that would support a First, Fourth, Fifth, or Fourteenth Amendment claim against Defendant Herb.  Therefore, all claims against Defendant Herb will be dismissed without prejudice.

Second, Plaintiff alleges that Defendants Moore, Nicklow, and Harry violated her constitutional rights based on their review and denial of the grievances filed.  (Doc. 32, pp. 11, 14–15.)  This is insufficient to support a § 1983 claim.  "Participation in the after-the-fact review of a grievance or appeal is not enough to establish personal involvement."  *Rode v. Dellarciprete*, 845 F.2d 1195, 1208 (3d Cir. 1988) (finding the filing of a grievance is not enough to show the actual knowledge necessary for personal involvement); *see also Brooks v. Beard*, No. 05-3196, 2006 WL 332547, 167 F. App'x 923, 925 (3d Cir. Feb. 14, 2006) (holding

that a state prisoner's allegation that prison officials and administrators responded inappropriately, or failed to respond to a prison grievance, did not establish that the officials and administrators were involved in the underlying allegedly unconstitutional conduct).  Therefore, such claims will be dismissed without prejudice.

While Plaintiff does not name Defendant Heist in her enumerated counts, Defendant Heist is identified as the grievance coordinator.  (Doc. 32, p. 2.) Therefore, the court infers that Plaintiff intends to bring constitutional claims against Defendant Heist for the denial of grievances.  However, as addressed above, "[p]articipation in the after-the-fact review of a grievance or appeal is not enough to establish personal involvement."  *Rode,* 845 F.2d at 1208.  Therefore, any implied claims against Defendant Heist are dismissed without prejudice for a lack of personal involvement.

Likewise, Plaintiff failed to name Defendant Grimes in her enumerated list of claims.  (Doc. 32, pp. 9–16.)  Despite this, Plaintiff is clearly attempting to bring an Eighth Amendment deliberate indifference to a serious medical needs claim and alleges that Defendant Grimes informed Plaintiff that the diagnosis of Gender Dysphoria by Defendant Bello was removed.  (*Id*., p. 6.)  Additionally, Defendant Grimes was a member of the PRT that allegedly "re-established" Plaintiff's Gender Dysphoria diagnosis.  (*Id*.)  Nothing in these alleged facts supports a finding of

personal involvement in the denial of medical treatment.  Defendant Grimes was simply the individual who informed Plaintiff of the removal of the diagnosis and was part of the PRT who re-established the diagnosis.  Therefore, to the extent that Plaintiff is raising an Eighth Amendment claims against Defendant Grimes, it will be dismissed without prejudice.

The DOC Defendants' motion to dismiss will be granted.  All claims against the DOC Defendants will be dismissed without prejudice for failure to demonstrate personal involvement.

## B. The Medical Defendants' Motion To Dismiss Will Be Granted In Part.

On March 14, 2023, Defendants Voorstad and Wellpath (collectively known as the "Medical Defendants") filed a motion to dismiss the amended complaint. (Doc. 48.)  The court will grant the motion in part and deny in part allowing some claims to proceed against Defendant Voorstad.

### 1. All Claims Against Defendant Wellpath

In the amended complaint, Plaintiff brings an Eighth Amendment deliberate indifference claim against Defendant Wellpath:

> They refused to acknowledge that even a prisoner medical policy might too inelastic in dealing with said identity disorder.  Decisions for that person, in this case Basemore, should be based on an individualized approach, as opposed to an inelastic general rule, which is Eighth Amendment unacceptable when the path for treatment leads to harm being incurred by the practitioners.

13

(*Id.*, p. 10.)

To state a claim under 42 U.S.C. § 1983, a plaintiff must meet two threshold requirements.  A plaintiff must allege: 1) that the alleged misconduct was committed by a person acting under color of state law; and 2) that as a result, she was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States.  *West v. Atkins*, 487 U.S. 42, 48 (1988).  It is well-settled that neither a state nor its agencies, are considered a "person" as that term is defined under § 1983 and, therefore, are not subject to a § 1983 suit.  *Hafer v. Melo*, 502 U.S. 21, 25–27 (1991).  Similarly, neither a prison nor a department within a prison is a person subject to suit under § 1983.  *Fischer v. Cahill*, 474, F.2d 991, 992 (3d Cir. 1973).

It is also well established that "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs to be liable, and cannot be held responsible for a constitutional violation which he or she neither participated in nor approved."  *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007) (citations and quotations omitted).  The Supreme Court has held that, while municipal bodies may not be sued solely for violations perpetrated by its employees or agents, "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under §

14

1983." *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 694 (1978).  Under this theory, a private corporation contracted by a prison to provide health care for inmates cannot be held liable on a *respondeat superior* theory; rather, it can only be held liable for constitutional violations if it has a custom or policy exhibiting deliberate indifference to a prisoner's serious medical needs. *Natale v. Camden County Correctional Facility*, 318 F.3d 575, 583–84 (3d Cir. 2003).  Accordingly, to state a viable § 1983 claim against Wellpath, the complaint must set forth "facts to state a claim that [it] had a policy, custom, or practice, and that the policy, custom, or practice caused the constitutional violation at issue." *See Sims v. Wexford Health Sources*, 635 F. App'x 16, 20 (3d Cir. 2015) (quoting *Natale*, 318 F.3d at 583).

Plaintiff's amended complaint repeatedly identifies the policy as the underlying reason treatment was terminated.  However, the policy Plaintiff refers to is the DOC policy.  (Doc. 32.)  Therefore, Plaintiff has failed to establish that Defendant Wellpath has a policy that violated her constitutional rights.  As a result, all claims against Defendant Wellpath will be dismissed without prejudice.

### 2.  Eighth Amendment Claim Against Defendant Voorstad

Plaintiff alleges that Defendant Voorstad "deliberately circumvented policy," and the abrupt end to the hormone treatment constituted cruel and unusual punishment.  (Doc. 32, pp. 10, 15–16.)  This amounts to a claim of cruel and

unusual punishment resulting from the deliberate indifference to a serious medical need.  Essentially, Plaintiff is alleging that Defendant Voorstad's failure to follow policy resulted in treatment starting and then abruptly stopping, leading to side effects of stopping treatment.

The Eighth Amendment deliberate indifference to a serious medical need standard has been set forth above.  *See supra*.  The mere misdiagnosis of a condition or medical need, or negligent treatment provided for a condition, is not actionable as a constitutional claim because medical malpractice is not a constitutional violation.  *See Farmer*, 511 U.S. at 835 (holding that "deliberate indifference describes a state of mind more blameworthy than negligence"); *Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004) ("Allegations of medical malpractice are not sufficient to establish a Constitutional violation."); *Singletary v. Pa. Dep't of Corr.*, 266 F.3d 186, 192 n.2 (3d Cir. 2002) (claims of medical malpractice, absent evidence of a culpable state of mind, do not constitute deliberate indifference under the Eighth Amendment).  Instead, deliberate indifference represents a much higher standard, one that requires "obduracy and wantonness, which has been likened to conduct that includes recklessness or a conscious disregard of a serious risk."  *Rouse v. Plantier*, 182 F.3d 182, 197 (3d Cir. 1999) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)).

"Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." *Durmer*, 991 F.2d at 67 (citations omitted). And courts will "disavow any attempt to second guess the propriety or adequacy of a particular course of treatment . . . [which] remains a question of sound professional judgment." *Palakovic v. Wetzel*, 854 F.3d 209, 228 (3d Cir. 2017) (quoting *Inmates of Allegheny County Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979)).  Mere disagreement over proper treatment does not state a claim upon which relief can be granted.  *White v. Napoleon*, 897 F.2d 103, 110 (3d Cir. 1990); *Monmouth Cty. Corr. Inst'l Inmates,* 834 F.2d at 346 ("Courts, determining what constitutes deliberate indifference, have consistently held that mere allegations of malpractice do not raise issues of constitutional import. . . Nor does mere disagreement as to the proper medical treatment support a claim of an eighth amendment violation.").

Defendant Voorstad describes the abrupt termination of treatment as a mere disagreement in appropriate treatment.  (Doc. 49, pp. 7–8.)  However, the alleged facts in the complaint do not support that conclusion.  Instead, the alleged facts demonstrate that Plaintiff was diagnosed with Gender Dysphoria, and Defendant Voorstad prescribed treatment in the form of feminizing hormone therapy.  (Doc. 32, p. 4.)  Although Plaintiff makes no allegation that Defendant Voorstad is the individual who ordered the discontinuation of treatment, Plaintiff alleges that

Defendant Voorstad refused to begin treatment again on August 14, 2020, and the diagnosis of Gender Dysphoria was not removed until August 27, 2020. (*Id*., p. 5.) Therefore, Plaintiff has successfully pled that Defendant Voorstad refused to provide treatment after determining that treatment was warranted.

Defendant Voorstad alleges that Plaintiff's treatment was again reinstituted, resulting in the alleged facts merely representing a delay in treatment. (Doc. 49, p. 3.) However, this information is not included in the amended complaint and there is no exhibit attached to the motion to support this assertion. (Docs. 32, 48, 49.) The court is limited to reviewing the allegations made in the complaint and "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents" attached to a defendant's motion to dismiss if the plaintiff's claims are based upon these documents. *See Mayer*, 605 F.3d at 230. Therefore, the court cannot rely on this unsupported assertion by Defendant Voorstad to conclude that the alleged termination in treatment merely constituted a delay in treatment. The court concludes that Plaintiff has alleged sufficient facts to survive the Rule 12(b)(6) challenge regarding the Eighth Amendment deliberate indifference claim for refusing treatment on August 14, 2020 against Defendant Voorstad.

### 3. Additional Constitutional Claims Against Defendant Voorstad

Plaintiff claims that the symptoms caused by stopping treatment violated her First, Fifth, Eighth, and Fourteenth Amendment rights. Specifically, Plaintiff alleges that Defendant Voorstad's decision to intentionally interfere with the standards of care policy resulted in 17.3 months of hormonal inactivity resulting in biochemical-physiological interference, atrophy, transubstantiation, chemical castration, and depression. (Doc. 32, p. 11.) It appears that Plaintiff is alleging that Defendant Voorstad's initiation of hormone treatment was in violation of policy and resulted in a violation of Plaintiff's constitutional rights. However, Plaintiff has failed to allege how her First or Fifth Amendment rights were violated. Her Eighth Amendment rights are addressed above. The court construes the Fourteenth Amendment challenge as an equal protection challenge.

The Equal Protection Clause of the Fourteenth Amendment commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that "all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Thus, to state a claim under the Equal Protection Clause, a plaintiff must allege that (1) she is a member of a protected class, and (2) she was treated differently from similarly situated inmates. *See id.* Plaintiff has failed to allege that she is a

member of a protected class in the complaint.  (Doc. 32.)  Therefore, any equal

protection claim will be dismissed.

Likewise, Plaintiff makes a general allegation that the policy in place for

SCI-Camp Hill's health care personnel deprived her of equal protection.  (*Id*, p.

15.)  Once again, Plaintiff failed to allege that she is a member of a protected class

in the complaint.  Therefore, this generic equal protection claim will be dismissed

without prejudice.

### C. Psychiatry Defendants' Motion To Dismiss Will Be Granted.

Defendants Centurion Managed Care and Bello (collectively referred to

as "Psychiatry Defendants") filed a motion to dismiss the amended complaint

arguing that Plaintiff failed to exhaust her administrative remedies.  (Doc. 61,

pp. 4–8.)  The court will now address the exhaustion issue for each

Defendant.

### 1. Defendant Centurion Managed Care

The Prison Litigation Reform Act of 1995 (PLRA), 42 U.S.C. § 1997e

et seq., requires prisoners to exhaust available administrative remedies before

suing prison officials for alleged constitutional violations.  *See id.* § 1997e(a);

*Ross v. Blake*, 578 U.S. 632, 639, 642 (2016) (explaining that only

"available" remedies must be exhausted).  Proper exhaustion is mandatory,

even if the inmate is seeking relief—like monetary damages—that cannot be

granted by the administrative system.  *See Woodford v. Ngo*, 548 U.S. 81, 85

(2006).  However, there are situations in which a grievance procedure may be

rendered "unavailable" to an inmate, such as when a prison official thwarts

an inmate's ability to use it, *Ross*, 578 U.S. at 643–44, when intimidation by

means of "serious threats of retaliation and bodily harm" prevent an inmate

from filing, *Rinaldi v. United* States, 904 F.3d 257, 266-67 (3rd Cir. 2018), or

when a prison has "rendered its administrative remedies unavailable . . . when it

failed to timely (by its own procedural rules) respond to [an inmate's] grievance

and then repeatedly ignored [her] follow-up requests for a decision on [her] claim,"

*Robinson v. Superintendent Rockview SCI*, 831 F.3d 148, 154 (3d Cir. 2016).

Psychiatry Defendants have attached a copy of their subpoena to the

Department of Corrections requesting all grievance records from August 1,

2020 through the present, Grievance No. 936918, and all related appeals from

Grievance No. 936918.  (Docs. 61-2, 61-3.)  Plaintiff's response does not

challenge Psychiatry Defendants' assertion that the only grievance she filed

during this period was Grievance No. 936918.  (Doc. 69.)

Federal Rule of Civil Procedure 12(d) provides as follows:

> If, on a motion under Rule 12(b)(6) or 12(c), matters
> outside the pleading are presented to and not excluded by
> the court, the motion must be treated as one for summary
> judgment under Rule 56. All parties must be given

> reasonable opportunity to present all the material that is
> pertinent to the motion.

Fed. R. Civ. P. 12(d).  However, the Third Circuit has held that "[g]iven that the exhaustion issue turns on the indisputably authentic documents related to [Plaintiff]'s grievances, we hold that we may also consider these without converting it to a motion for summary judgment."  *Spruill*, 372 F.3d at 223; *see Couthinho-Silva v. Ramirez*, No. 3:17-CV-00378, 2017 WL 5588211 at *6–7 (M.D. Pa. Nov. 2, 2017) (noting that the Third Circuit has limited review of grievances without conversion so as to address issues of exhaustion and procedural default).

Since the court is only reviewing the grievance and subsequent appeals for the sake of exhaustion, and Plaintiff has not disputed the alleged fact that this is the only grievance filed, the court will consider the documents without converting the Rule 12(b)(6) motion to a motion for summary judgment.

Grievance No. 936918 was filed on July 16, 2021 and concerns a June 30, 2021 meeting with a Mr. George Clements, who is identified as the "CCPM." (Doc. 61-3, p. 5.)  Plaintiff writes that during this meeting, Mr. Clements stated that "[s]tarting you early was a mistake now, we're going to go through the proper channels and start the process again."  (*Id*.)  Plaintiff then sets forth a summary of the events of August 2020 and alleging that the termination of treatment in 2020 constituted an Eighth Amendment violation.  (*Id*., pp. 5–6.)  Plaintiff alleges that

after treatment suddenly stopped in August of 2020, she was placed on a one year

suspension of hormones and that "one year has elapsed and, the time for revisiting

Feminizing Hormone Therapy [FHT] is Now."  (*Id*., p. 6.)  As a remedy, Plaintiff

seeks the restarting of hormone therapy, transfer to SCI-Phoenix, and monetary

compensation.  (*Id*.)

Psychiatry Defendants argue that this grievance was premised on the June

2021 meeting and not the August of 2020 termination of treatment.  However, the

initial review response demonstrates that the grievance was read as a challenge to

the termination of treatment in August of 2020.  (Doc. 61-3, p. 8) ("I am in receipt

of your grievance in which you allege that you were improperly removed form

'Feminizing Hormone Therapy'").

Psychiatry Defendants are correct, however, that Centurion Managed Care

was not named in the grievance.  Additionally, ADM-DC 804 states an "inmate

shall identify individuals directly involved in the event(s)."  (Doc. 61-1, p. 5.)

Based on this, Psychiatry Defendants argue that by failing to name Centurion

Managed Care, Plaintiff has failed to exhaust all claims against it.

In *Jones v. Bock*, the United States Supreme Court concluded that the state

prisoners' Section 1983 actions were not automatically rendered non-compliant

with the PLRA when those prisoners had failed to identify all of the named

defendants in previous administrative grievances.  549 U.S. 199, 217 (2017).  In

support, the Supreme Court explained that the PLRA does not contain a "name all defendants" requirement in order to properly exhaust. *See id.* The Supreme Court also explained, however, that proper exhaustion requires completion of the administrative review process in accordance with the relevant procedural rules, which are not defined by the PLRA, but by the prison's internal grievance process. *See id.* at 218. As such, the Supreme Court stated that the level of detail that will be necessary for an inmate to comply with the administrative review process "will vary from system to system and claim to claim[.]" *See id.*

In this case, DC-ADM 804 expressly requires that, in the initial grievance, the inmates "shall identify individuals directly involved in the event(s)." (Doc. 61-1, p. 5.) The court notes that this is distinguishable, and materially so, from the facts in *Jones*, where the pertinent prison policy did *not* impose a requirement on inmates to identify the wrongdoers. *See Jones*, 549 U.S. at 218 (stating that the Michigan Department of Corrections' policy did not require the prisoners "to identify a particular responsible party" and, thus, the policy did not support a "conclusion that the grievance process was improperly invoked simply because an individual later named as a defendant was not named at the first step of the grievance process"). As such, Plaintiff's failure to identify Defendant Centurion Managed Care directly or indirectly in the grievance results in a failure to exhaust the administrative remedies. Therefore, all claims against Defendant Centurion

24

Managed Care will be dismissed without prejudice as Plaintiff may plead a justifiable excuse in any amended pleading.

### 2. Defendant Bello

In contrast to Defendant Centurion Managed Care, Defendant Bello was named in Grievance No. 936918: "Although grievant met all the necessary prerequisites before starting Feminizing Hormone Therapy [FHT] treatment . . . Grievant when through . . . Psychiatric Assessment/Diagnoses by Psychiatrist Bello . . ." (Doc. 61-3, p. 5.) However, Defendant Bello raises the issue of Plaintiff's late filing of the grievance. (Doc. 61, p. 6.) The court notes that Plaintiff admits that Grievance No. 936918 was denied at the final appeal as untimely. (Doc. 32, p. 70.)

As addressed at length above, to exhaust administrative remedies an inmate must comply with all applicable grievance procedures and rules. *Spruill,* 372 F.3d at 231. The PLRA requires not only technical exhaustion of the administrative remedies, but also substantial compliance with procedural requirements. *Id.* at 227–32; *see also Nyhuis v. Reno,* 204 F.3d 65, 77–78 (3d Cir. 2000). A procedural default by the prisoner, either through late or improper filings, bars the prisoner from bringing a claim in federal court unless equitable considerations warrant review of the claim. *Spruill,* 372 F.3d at 227–32; *see also Camp v. Brennan,* 219 F.3d 279 (3d Cir. 2000).

Here, Grievance No. 936918 was filed in June of 2021, nearly a year after the August of 2020 termination of treatment.  Therefore, all claims against Defendant Bello are dismissed without prejudice to Plaintiff pleading that a timely exhaustion was not available in any amended complaint.

### D. Plaintiff's Motion to Amend the Pleadings Will Be Granted.

As addressed above, Plaintiff filed a motion to amend/correct the amended complaint on March 30, 2023.  (Doc. 53.)  However, a review of this document demonstrates that Plaintiff is not actually seeking leave to file a second amended complaint, but rather that she erred in asserting that Defendant Grimes does not have a qualifying Master's Degree, and would like to request discovery prove that such a degree exists.  (*Id*.)  Standing alone, this is not a proper basis for seeking leave to amend the complaint.

Nonetheless, Plaintiff will be provided an opportunity to amend her pleadings to cure the defects addressed above pursuant to *Phillips*.  Plaintiff will also have an opportunity to amend any inaccurate assertions regarding Defendant Grimes in an amended pleading.

### E. Plaintiff's Motion To Hold the Case In Abeyance Will Be Denied.

On September 7, 2023, the court received and filed a motion to hold the case in abeyance while Plaintiff was housed in the restrict housing unit and did not have access to legal documents.  (Doc. 71.)  Expressly, Plaintiff was concerned that the

26

court would rule on the pending motions to dismiss before she had an opportunity to respond.  (*Id*.)  In addressing the pending motions to dismiss, the court has considered Plaintiff's responses.  *See supra*.  Therefore, Plaintiff's motion will be denied as moot.

### F.  Plaintiff's Motions To Appoint Counsel Will Be Denied.

Plaintiff has two motions for appointment of counsel that are pending before the court.  (Docs. 51, 72.)

Although prisoners have no constitutional or statutory right to appointment of counsel in a civil case, the court has discretion to "request an attorney to represent any person unable to afford counsel."  28 U.S.C. § 1915(e)(1); *see Houser v. Folino*, 927 F.3d 693, 697 (3d Cir. 2019).  The appointment of counsel is a privilege, not a statutory or constitutional right.  *Brightwell v. Lehman*, 637 F.3d 187, 192 (3d Cir. 2011); *Tabron v. Grace*, 6 F.3d 147, 153 (3d Cir. 1993). However, representation by counsel may be appropriate under certain circumstances after a finding that the plaintiff's case has arguable merit in fact and law.  *Tabron*, 6 F.3d at 155.  If the court finds that the plaintiff has crossed this threshold inquiry, the court should consider the following factors in deciding whether to request a lawyer to represent an indigent plaintiff:

> (1) the plaintiff's ability to present his or her own case;
> (2) the complexity of the legal issues;
> (3) the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue such investigation;

(4) the plaintiff's ability to retain counsel on his or her own behalf;

(5) the extent to which a case is likely to turn on credibility determinations, and;

(6) whether the case will require the testimony of expert witnesses.

*Tabron*, 6 F.3d at 155-57.  This list of factors is non-exhaustive, and no single factor is determinative.  *Montgomery v. Pinchak*, 294 F.3d 492, 499 (3d Cir. 2002) (citing *Parham v. Johnson*, 126 F.3d 454, 458 (3d Cir. 1997)).  Instead, these factors serve as guideposts for the district courts to ensure that the precious commodity of volunteer attorney time is not "wasted on frivolous cases." (*Id.*)

Currently, Plaintiff is unable to meet the threshold matter of establishing that her case has arguable merit in fact and law.  While the Eighth Amendment claim against Defendant Voorstad survived the Rule 12(b)(6) motion and all claims against the unnamed nurse have gone unchallenged, it appears that Plaintiff has failed to exhaust her administrative remedies regarding the August 2020 termination of treatment by not timely filing a grievance.  Therefore, absent an amended pleading demonstrating that an administrative remedy was not available, these surviving claims will not likely survive a similar challenge by Defendant Voorstad.

As a result, Plaintiff's motions to appoint counsel will be denied.  If future proceedings demonstrate the need for counsel, the matter may be reconsidered either *sua sponte* or pursuant to a properly filed motion.

## CONCLUSION

For the reasons set forth above, the DOC Defendants' motion to dismiss will be granted. The Medical Defendants' motion to dismiss will be granted in part, with the sole surviving claim being the Eighth Amendment deliberate indifference claim against Defendant Voorstad. Psychiatry Defendants' motion to dismiss will be granted.

However, before dismissing a civil rights complaint, a district court "must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips*, 515 F.3d at 245. Plaintiff's motion to amend/correct her complaint will be granted, and Plaintiff will be given leave to file a second amended complaint is she so desires. She must clearly label the document as a second amended complaint and use the docket number assigned to this case. Plaintiff is cautioned that any second amended complaint must stand alone and she must plead all claims she hopes to raise, including those that survived this series of Rule 12(b)(6) motions. Should Plaintiff fail to timely file an amended complaint within thirty days, the case will proceed solely on the Eighth Amendment claim raised against Defendant Voorstad for refusing treatment on August 14, 2020.

Plaintiff's motions to appoint counsel will also be denied without prejudice.

An appropriate order follows.

<u>s/Jennifer P. Wilson</u>
JENNIFER P. WILSON
United States District Judge
Middle District of Pennsylvania

Dated: February 1, 2024